# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| MARK MANIBUSAN,<br><br>  Plaintiff,<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>  Defendants. | Case No. 3:17-CV-00303-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 72] |

This case involves a civil rights action filed by Plaintiff Mark Manibusan ("Manibusan") against Defendants Renee Baker ("Baker"), Dwayne Baze ("Baze"), Tara Carpenter ("Carpenter"), James G. Cox ("Cox"), James Dzurenda ("Dzurenda"), and Rhonda Larsen ("Larsen") (collectively referred to as "Defendants").[2] Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 72.) Manibusan responded, (ECF No. 75), and Defendants replied. (ECF No. 78.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 72), be granted.

///

///

///

---

[1] This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2] Manibusan also named William Sandie ("Sandie"), Robert LeGrand ("LeGrand"), Dewayne Deal ("Deal"), Cathy Baker ("Baker"), and Megan McClellan ("McClellan") as defendants in this action. (ECF No. 15.) Deal was served on August 7, 2020. (ECF No. 53.) McClellan and LeGrand were served on August 25, 2020. (ECF Nos. 54, 55.) Sandie was served on August 28, 2020. (ECF No. 57.) Baker was served on July 19, 2019. (ECF No. 20), and it appears a notice of intent to dismiss for failure to effectuate service pursuant to Fed. R. Civ. P. 4(m) was improperly issued by the Court. (*See* ECF No. 58.) Although they have been served, these defendants have not otherwise appeared in this action. However, for the same reasons discussed below, the Court recommends that summary judgment be granted in their favor.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Manibusan is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC").[3] On May 12, 2017, Manibusan, appearing *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983. (ECF Nos. 1-1). Manibusan generally alleged that he was charged with a sex crime that occurred between January 1, 2006 and October 11, 2008, and on June 20, 2007, Nevada law concerning the way time for a sentence should be calculated for sex offenders was changed per NRS § 209.4465. (*Id.*) Manibusan claims this change in law should have allowed him to appear before the parole board earlier. (*Id.*) Manibusan's complaint was screened pursuant to 28 U.S.C. § 1915A and was dismissed with leave to amend. (ECF No. 6.)

Manibusan, again appearing *pro se*, filed an unsigned first amended complaint and an "amended supplement 2nd". (ECF Nos. 9, 10.) The Court ordered Manibusan to refile a signed copy of his amended complaint and title it as a third amended complaint. (ECF No. 13.) On April 15, 2019, counsel entered an appearance on behalf of Manibusan and filed a Third Amended Complaint ("TAC"). (ECF Nos. 14, 15.) At first blush, because Manibusan was no longer incarcerated and was represented by counsel upon filing the TAC, the Court permitted Manibusan to proceed on the TAC without screening. (ECF No. 17.) However, the Court ultimately screened the TAC pursuant to 28 U.S.C. § 1915A. (ECF No. 29.)

In his TAC, Manibusan alleged 13 separate causes of action against current and former employees of the NDOC. Many of the counts challenged the determination of Manibusan's maximum sentence or alleged that he was imprisoned for more years than authorized by law. (*See* ECF No. 15.) The Court dismissed all claims that challenged the duration of his confinement as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (ECF No. 29 at 10-12.) In *Heck*, the Supreme Court held that "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by

---

[3] During the pendency of this action, Manibusan was released from custody. (ECF No. 5.)

actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has not been . . . invalidated is not cognizable under § 1983." *Id.* at 487. "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* As a result, the Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis added).

Thus, the Court dismissed all claims that were based on an allegation that Manibusan's maximum sentence was calculated incorrectly, that he was held in prison longer than he lawfully should have been, or otherwise necessarily challenges the duration of his confinement. (ECF No. 29 at 12.) The Court allowed Manibusan to proceed on the following claims:

> (1) A Fourteenth Amendment "class of one" equal protection claim alleging prison staff singled out Manibusan and treated him differently than fellow inmate Frederick Vonseydewitz, following the Nevada Supreme Court's decision in Vonseydewitz's habeas petition, which challenged the prison's interpretation of a Nevada good time credit statute in June 2015;
>
> (2) A First Amendment retaliation claim alleging prison staff threatened Manibusan with solitary confinement if he continued to advance his arguments regarding

    the application of the good time credits; and

  (3) An ex post facto claim under both the Nevada and United States Constitutions alleging prison staff retroactively applied NRS § 209.4465(8) to deny application of good time credits to Manibusan's minimum sentence.

(*See* ECF No. 29 at 23-24.)

  On February 8, 2022, Defendants filed the instant motion for summary judgment arguing Defendants are entitled to summary judgment because: (1) Manibusan cannot establish a violation of the equal protection clause of the Fourteenth Amendment; (2) there is no evidence supporting Manibusan's First Amendment Retaliation Claim; (3) Manibusan's ex post facto claim related to NRS § 209.4465(8) has expressly been rejected by the Nevada Supreme Court and as such fails as a matter of law; and (4) Defendants are entitled to qualified immunity. (ECF No. 72.) Manibusan opposed the motion, (ECF No. 75), and Defendants replied. (ECF No. 78.)

## II. LEGAL STANDARDS

  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

  The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the non-moving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the non-moving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the non-moving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the non-moving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The non-moving party

must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the non-moving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the non-moving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his contentions in motions and pleadings may be considered as evidence to meet his burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a non-moving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III. DISCUSSION

Manibusan's surviving claims are essentially comprised of two key issues. The first issue relates to Manibusan advancing arguments regarding application of good time credits and alleged retaliation as a result. The second issue relates to alternative arguments that either Defendants have failed to correctly apply NRS § 209.4465(7)(b), in which case they have singled Manibusan out as a "class of one", or that Defendants have inappropriately applied NRS § 209.4465(8) retroactively, in which case it is operating as an *ex post facto* law, as applied. The Court addresses each in turn.

### A. Retaliation Claims

Manibusan's retaliation claims are based on allegations that prison staff threatened him with solitary confinement if he continued to pursue proper application of good time credits. (ECF No. 15 at 16, 17, 20.)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005). "To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotations omitted). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for an alleged retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Article 1, Section 9 of the Nevada Constitution provides free speech protections that are coextensive with the First Amendment to the United States Constitution. *S.O.C., Inc. v. Mirage Casino–Hotel*, 23 P.3d 243, 250–51 (Nev. 2001).

Defendants assert they are entitled to summary judgment as to the retaliation claims, as there is no evidence supporting those claims aside from Manibusan's own "bald assertion". (ECF No. 72 at 8-10.) Defendants assert Manibusan cannot show that

any adverse action was taken against him, there is no evidence of the unnamed prison officials knowing he had filed grievances or otherwise complained of the application of his good time credits, or that he was in any way dissuaded from utilizing the administrative process to file grievances or otherwise complain about application of his good time credits (as evidenced by his own grievance history).

In his opposition, Manibusan does not address his retaliation claims. (*See* ECF No. 75.) Thus, he has presented no argument or evidence to support his retaliation claims. Manibusan bears the burden of proving that his protected conduct was the substantial or motivating factor behind alleged retaliatory conduct. Because Manibusan has not come forward with any evidence that supports his claims, he has failed to meet his burden on summary judgment to create an issue of fact. Therefore, the Court recommends Defendants' motion for summary judgment be granted as to the retaliation claims.

**B.  Fourteenth Amendment Equal Protection and "Class of One" Claim**

Manibusan's "class of one" equal protection claim asserts that it was a violation of equal protection for NDOC officials to apply the Nevada Supreme Court's ruling in *Vonseydewitz v. LeGrand*, 131 Nev. 1360 (2015) (unpublished disposition) to Vonseydewitz, but not apply it to other prisoners, including Manibusan, who did not have court rulings in their own cases but had criminal sentences comparable to that of Vonseydewitz.

In *Olech*, the Supreme Court explicitly addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The Supreme Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*; *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (recognizing that an equal protection claim may be maintained in some circumstances even if the plaintiff does not allege class-based discrimination, "but

instead claims that she has been irrationally singled out as a so-called 'class of one'").

Where a "class of one" equal protection claim is at issue, the plaintiff must allege facts sufficient to identify the group of individuals with whom he is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011); *Chappell v. Bess*, No. 2:01-CV-01979 KJN P, 2012 WL 3276984, at *19–21 (E.D. Cal. Aug. 9, 2012). "Similarly situated" persons are those "who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

As was allegedly the case with Manibusan, NDOC officials took the position that Vonseydewitz was not entitled under the law to have earned credits applied to his minimum sentence under NRS § 209.4465(7)(b). *Vonseydewitz*, 131 Nev. 1360 at *1. However, in the unpublished disposition related Vonseydewitz's habeas coprus petition, the Nevada Supreme Court ruled that NDOC officials had misinterpreted NRS § 209.4465(7)(b) and reversed and remanded for proceedings consistent with the unpublished disposition. *Id.* at *3. Here, Manibusan alleges that the NDOC did not apply the Nevada Supreme Court's unpublished *Vonseydewitz* disposition to him. However, under Nevada Rule of Appellate Procedure 36(c), an unpublished disposition by the Nevada Supreme Court in one person's case establishes mandatory precedent in that particular person's case only but does not establish mandatory precedent for another person's case. Thus, under the law, the Nevada Supreme Court's unpublished disposition in *Vonseydewitz* was mandatory precedent for Vonseydewitz, but the unpublished decision was not mandatory precedent for any NDOC official's decisions regarding Manibusan. Manibusan has not, and cannot, allege facts sufficient to show that he and Vonseydewitz were in all relevant respects alike. Accordingly, Manibusan's equal protection claim fails as a matter of law and the Court therefore recommends Defendants' motion for summary judgment be granted as to the equal protection claim.

///
///

### C. Ex Post Facto Claim Related to NRS § 209.4465(8)

Finally, Manibusan alleges Defendants have inappropriately applied NRS § 209.4465(8) retroactively, in which case it is operating as an *ex post facto* violation.

Article I of the United States Constitution prohibits states from passing Ex Post Facto laws. U.S. Const. Art. I, § 10, cl. 1. The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981); *see also Garner v. Jones*, 529 U.S. 244 (2000). The Ex Post Facto Clause does not forbid changes in the law. To fall within the *ex post facto* prohibition, a law must be applied retrospectively, which means that it must apply to events occurring before its enactment. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). Thus, the incorrect interpretation and misapplication of a law that does not apply retrospectively to a person does not constitute a violation of the Ex Post Facto Clause. *See, e.g., Vonseydewitz*, 2015 WL 3936827 at *3 (rejecting *ex post facto* claim where official incorrectly applied NRS § 209.4465(b), which was not applied retroactively).

Manibusan refers to NRS § 209.4465(8) in his allegations of an *ex post facto* violation. NRS § 209.4465(8), which went into effect in July of 2007, imposed exceptions to NRS § 209.4465(7)(b) and provided that prisoners convicted of certain types of offenses, such as category A and category B felonies, would not have their earned credits deducted from the minimum terms imposed by their sentences. NRS § 209.4465(8) (2007). NRS § 209.4465(8) provides:

> 8. Credits earned pursuant to this section by an offender who has not been convicted of:
> (a) Any crime that is punishable as a felony involving the use or threatened use of force or violence against the victim;
> (b) A sexual offense that is punishable as a felony;
> (c) A violation of NRS § 484C.110, 484C.120, 484C.130 or 484C.430 that is punishable as a felony; or

(d) A category A or B felony,

apply to eligibility for parole and must be deducted from <u>the minimum term</u>

imposed by the sentence until the offender becomes eligible for parole and

must be deducted from <u>the maximum term</u> imposed by the sentence.

NRS § 209.4465(8) (2007) (emphasis added).

At the same time that the statute was amended to add NRS § 209.4465(8), NRS § 209.4465(7) was amended to begin, "Except as otherwise provided in subsection 8." Thus, under the amended statute, category B felons who committed their offenses after the effective date of that amendment were not eligible to have good time credits applied when determining their maximum terms or when determining the minimum terms they were required to serve before being eligible for parole.

But, because of how NDOC officials were interpreting NRS § 209.4465(7)(b), there also were offenders, such as the petitioners in *Vonseydewitz* and *Williams*, who unquestionably committed their crimes before the effective date of the amendment who also were not having credits applied to their minimum eligibility parole dates, not because of the amendment, but due to the way that prison officials were interpreting and applying the limiting language in NRS § 209.4465(7)(b), a statutory provision that was being applied incorrectly but not retrospectively. In *Vonseydewitz*, the Nevada Supreme Court rejected the petitioner's claim that NDOC officials were retroactively applying NRS § 209.4465(8) in violation of the *ex post facto* clause. *Vonseydewitz*, 2015 WL 3936827 at *3. The Nevada Supreme Court found that the responses to Vonseydewitz's grievances showed that officials were not retroactively applying NRS § 209.4465(8) to deny the petitioner credits towards his parole eligibility date but instead were misinterpreting and misapplying the exception in the limiting language of NRS § 209.4465(7)(b), which was in effect when he committed his offense. *Id.*; *Williams v. State Department of Corrections*, 402 P.3d 1260 (Nev. Oct. 5, 2017) (also concerned the incorrect interpretation of the language in NRS § 209.4465(7)(b)).

///

In the instant case, Manibusan alleges that he was not having any good time credits applied to his sentence after the enactment of NRS § 209.4465(8) because NRS § 209.4465(8) was applied to him even though he committed his crimes before its enactment. Amending the law is not a violation of the Ex Post Facto Clause. The new law must be applied to him retrospectively by Defendants. Manibusan does not present any evidence that would show Defendants found him ineligible to ever have good time credits applied to his parole eligibility date because they applied NRS § 209.4465(8) to him and did not apply 209.4465(7)(b). In fact, Manibusan appears to be alleging that Defendants were applying NRS § 209.4465(7)(b) to him, but that they were applying it incorrectly, and he alleges that NDOC officials refused to change this even after the *Vonseydewitz* decision because Manibusan did not yet have a court order comparable to the order Vonseydewitz had.

However, to the extent Manibusan could even prove a misapplication of NRS § 209.4465(8), it would necessarily be *Heck* barred, as a retrospective application of NRS § 209.4465(8) would affect not only Manibusan's minimum sentence, but also his maximum sentence. *See Heck*, 512 U.S. at 486-87 ("in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

Nonetheless, as discussed above, an incorrect application of the law, as appears to be the case here, is not sufficient to demonstrate an *ex post facto* violation. Because Manibusan has not come forward with any evidence that shows more than an incorrect interpretation and application of the law, he cannot support his *ex post facto* violation claim. Accordingly, because the Court finds that Manibusan has not come forward with evidence to support his *ex post facto* claims, or the Court finds that his claims are

otherwise barred by *Heck*, the Court recommends Defendants' motion for summary judgment be granted as to the *ex post facto* claims.[4]

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 72), be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment (ECF No. 72) be **GRANTED**; and

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

DATED: June 13, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The Court does not address Defendants' qualified immunity argument because the Court finds that Manibusan's constitutional claims fail on the merits.